UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARLON SAMPSON, | |
| Plaintiff, | 19 Civ. 6270 (PAE) (SN) |
| -v- | |
| | OPINION & ORDER |
| ANDREW M. SAUL, *Commissioner of Social Security*, | |
| Defendant. | |

PAUL A. ENGELMAYER, District Judge:

Plaintiff Marlon Sampson brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability insurance benefits ("DIB"). *See* Administrative Record ("R.") at 15. On January 16, 2020, Mr. Sampson moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. 11. On March 18, 2020, the Commissioner filed a cross-motion for judgement on the pleadings, also pursuant to Rule 12(c). Dkt. 15. On July 27, 2020, the Honorable Sarah Netburn, United States Magistrate Judge, issued a Report and Recommendation, recommending that the Court deny Mr. Sampson's motion and grant the Commissioner's motion. *See* Dkt. 18 ("Report"). On August 18, 2020, Mr. Sampson filed objections to the Report, Dkt. 21 ("Objections"), and on September 2, 2020, the Commissioner filed a response to those objections, Dkt. 22 ("Def. Resp."). For the following reasons, the Court adopts the Report in full.

I.      **Background**[1]

The Court adopts as accurate the statement of facts set out in the Report, to which neither party objects, and incorporates by reference the summary of the facts provided in the Report. *See* Report at 2–9.  For purposes of addressing Mr. Sampson's objections, however, the Court briefly summarizes the relevant background.

Mr. Sampson, now age 52, worked as a corrections officer for the City of New York between May 1989 and July 2013.  Until 2012, his duties at work included a substantial amount of physical activity.  But, after an injury at work, from 2012 to 2013 he performed "light duty" as a surveillance systems monitor, which entailed sitting at a desk and watching a TV monitor.  In 2017, Mr. Sampson returned to work part-time for about one year as a Care and Custody Control officer for children in a group home.  Part of his duties in this job involved restraining children. He later testified that he found these duties difficult as a result of his impairments.

On August 8, 2016, Mr. Sampson filed an application for DIB benefits, based on a disability beginning on July 18, 2013.  Mr. Sampson's application was denied, but he timely requested and was granted a hearing before an Administrative Law Judge ("ALJ").  On October 2, 2018, the ALJ conducted a hearing, during which Mr. Sampson was represented by counsel.  Mr. Sampson alleged that he was disabled due to problems with his right leg and hands, joint arthritis, pain in his knee, wrist, and shoulder, and chronic breathing problems.  The ALJ also heard testimony from a vocational expert.  On October 18, 2018, the ALJ issued a

---

[1] The Court's summary of the facts of this case is drawn from the detailed account of the facts provided in the Report.

decision finding that Mr. Sampson was not disabled under the Social Security Act during the relevant period, between July 2013 and October 2018, and thus was not entitled to benefits.

In making its determination, the ALJ followed the five-step sequential analysis set forth in 20 C.F.R. § 404.1520.  At step one, the ALJ found that Mr. Sampson had not engaged in substantial gainful activity since his application date.  R. at 17.  At step two, the ALJ found that Mr. Sampson had severe impairments of bilateral degenerative joint disease of the knees, bilateral wrist tenosynovitis/derangement, and right shoulder degenerative joint disease.  *Id.*  At step three, the ALJ found that none of Mr. Sampson's impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  The ALJ then studied Mr. Sampson's symptoms and found that, although some of his symptoms were reasonably expected to result from medically determinable impairments, other symptoms he claimed to have as a result of his impairments were inconsistent with the objective medical evidence.  R. at 18–19.  At step four, the ALJ considered Mr. Sampson's residual functional capacity ("RFC"), and found that, although he had some physical limitations and must avoid moderate exposure to irritants, he could perform limited medium or sedentary work, including his previous jobs as a surveillance systems monitor and correctional officer.  *Id.*  The ALJ then concluded that Mr. Sampson was not disabled.

On May 17, 2019, the Appeals Council denied Mr. Sampson's request for review.  And, on July 8, 2019, Mr. Sampson commenced the present action.  *See* Dkt. 1.  His Complaint asserts that the ALJ's decision was not supported by substantial evidence and applied an erroneous standard of law.  *Id.*  On July 9, 2019, the Court referred the case to Judge Netburn

for a Report and Recommendation.  Dkt. 6. The parties then filed cross-motions for judgment on the pleadings.  Dkts. 11, 15.

On July 27, 2020, Judge Netburn issued a careful and thorough Report and Recommendation, recommending that the Commissioner's motion for judgment on the pleadings be granted, and Mr. Sampson's motion denied.  Report at 18.  Judge Netburn found that although some record evidence supported Mr. Sampson's alleged impairments, there was also substantial evidence to support the ALJ's assessment of Mr. Sampson's RFC.  Report at 13–14.  Judge Netburn also found that the ALJ properly considered the record evidence and that the ALJ's credibility findings regarding the extent of Mr. Sampson's pain were supported by substantial evidence.  Report at 16.  And Judge Netburn determined that the ALJ had considered the medical evidence in the record thoroughly and that the record supported the ALJ's conclusion that Mr. Sampson could perform limited medium or sedentary work, including his past responsibilities as a correctional officer or surveillance systems monitor.  Report at 12–17.  Judge Netburn concluded that the ALJ's decision was supported by substantial evidence and did not contain any legal errors.

On August 18, 2020, Mr. Sampson filed objections to the Report.  *See* Objections.  On September 2, 2020, the Commissioner responded.  *See* Def. Resp.

## II.    Legal Standard

### A.    Report and Recommendation

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  When specific objections are timely made, "[t]he district judge must

determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).  "To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Ruiz v. Citibank, N.A.*, No. 10 Civ. 5950 (KPF) (RLE), 2014 WL 4635575, at *2 (S.D.N.Y. Aug. 19, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)); *see also, e.g.*, *Wilds v. UPS*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003). And, "[t]o the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report and Recommendation for clear error." *Lilley v. Berryhill*, No. 16 Civ. 4396 (PAE), 2017 WL 4236568, at *2 (S.D.N.Y. Sept. 25, 2017).

### B.  Review of the Commissioner's Decision

A district court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error."  *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)); *see also Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (reviewing courts "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied") (citations omitted)).  "It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled . . . or to answer in the first instance the inquiries posed by the five-step analysis set out in the SSA regulations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw*, 221 F.3d at 131 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Second Circuit has described substantial evidence review as "a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault*, 683 F.3d at 448 (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)). Accordingly, once an ALJ finds facts, this Court may only reject those findings "if a reasonable factfinder would *have to conclude otherwise.*" *Id.* (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis in *Brault*).

## III.   Discussion

Mr. Sampson makes three objections to Judge Netburn's Report. First, he argues that, contrary to the Report, the ALJ erred in not explicitly discussing all of the evidence in the record when assessing his RFC. He asserts that the ALJ made two material omissions, and that the ALJ's decision is thus unsupported by substantial evidence. Objections at 2–4. Second, he argues that the Report incorrectly affirmed the ALJ's credibility determination with respect to certain symptoms claimed by Mr. Sampson. Objections at 5–7. And third, he argues that Judge Netburn erred in not discussing what he contends was the ALJ's failure to properly develop the record. Objections at 8–10.

Where objections reprise arguments already considered and rejected in the Report, it is appropriate for the Court to review the Report only for clear error. *See Acevedo v. Lempke*, No. 10 Civ. 5285 (PAE) (HBP), 2014 WL 4651904, at *3 (S.D.N.Y. Sept. 17, 2014). Here, although Mr. Sampson's first two points were, to some extent, considered and rejected in the Report, Mr. Sampson's objections do add some specificity. In the interest of thoroughness, the

6

Court accordingly reviews his first two objections to the Report *de novo*. Nonetheless, the Court finds that, even under this standard of review, these two objections fail.

As to his third objection regarding the ALJ's alleged failure to develop the record, Mr. Sampson acknowledges that he raises this challenge for the first time in his objections to the Report. Objections at 8. A district court need not "entertain new grounds for relief or additional legal arguments that were not before the magistrate judge," *Rose o/b/o X.G.T.A. v. Berryhill*, No. 18 Civ. 509 (LGS), 2019 WL 2498279, at *2 (S.D.N.Y. June 17, 2019); s*ee Walker v. Stinson*, No. 99-54, 2000 WL 232295, at *2 (2d Cir. Jan. 24, 2000) (noting that a "district court did not abuse its discretion in refusing to consider" an argument that a petitioner failed to raise before a magistrate judge). Nonetheless, in the interest of thoroughness, the Court also reviews that objection *de novo*. It too, however, fails.

### A.    Reconciliation of Contradictory Evidence

Mr. Sampson argues that the ALJ erred in failing to discuss or reconcile two pieces of evidence that, he contends, contradict the ALJ's conclusion as to Mr. Sampson's RFC. Objections at 2. But, upon *de novo* review, the Court finds that the ALJ's RFC finding is supported by substantial record evidence, and that the ALJ did not err in not explicitly discussing the two items to which Mr. Sampson points.

Mr. Sampson first points to a statement by Dr. Archbald, a consultative examiner who examined Mr. Sampson in September 2016 and found that Mr. Sampson "had less than a quarter squat." R. at 246. Mr. Sampson argues that this statement contradicts the ALJ's finding that Mr. Sampson "can occasionally crouch, kneel, and crawl," and that the ALJ failed to take account of Dr. Archbald's finding in making its findings as to Mr. Sampson's RFC. Objections at 4.

It was not error for the ALJ not to give controlling weight to this facet of Dr. Archbald's opinion.  That is because Dr. Archbald was a consultative examiner, not a treating physician. *See Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) ("There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations."). And the statement by Dr. Archbald on which Mr. Sampson seizes—that Mr. Sampson "had less than a quarter squat," R. at 246—was an exam finding, not a medical opinion.  *See Bailey v. Berryhill*, No. 15 Civ. 9287 (LTS) (RLE), 2017 WL 1102671, at *2 (S.D.N.Y. Mar. 24, 2017) ("The results of objective tests, including any clinical or diagnostic techniques, are not medical opinions." (citations omitted)).

Nor was it error for the ALJ not to explicitly discuss the one line of Dr. Archbald's exam findings addressing Mr. Sampson's ability to squat.  The ALJ did address Dr. Archbald's report generally, and gave the doctor's findings "some weight."  Report at 14; R. at 22.  The ALJ was not required to expressly discuss all exam findings that supported a more restrictive RFC.  *See Brault*, 683 F.3d at 448 ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." (citation omitted)); *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's decision." (citation omitted)).

Here, the ALJ's RFC finding was consistent with the record as a whole.  That the ALJ did not accept or explicitly reference each of Dr. Archbald's exam findings does not mean that the ALJ ignored those findings or erred in not adopting them.  The Court accordingly overrules Mr. Sampson's first objection.

8

Mr. Sampson next argues that the ALJ erred in failing to discuss the progress report from Dr. Henoch's second examination of Mr. Sampson, which stated that Mr. Sampson had a 100% temporary disability and could not work.  Objections at 4.  But, upon *de novo* review, the Court finds that the ALJ did not err in not giving weight to this statement.  Dr. Henoch's statement that Mr. Sampson had a "100% temporary disability" was made in a Worker's Compensation form, and "findings of disability for workers' compensation purposes are of limited utility for disability purposes under the Social Security Act."  *DeJesus v. Chater*, 899 F. Supp. 1171, 1177 (S.D.N.Y. 1995); s*ee also Manaum v. Colvin*, No. 13 Civ. 4213 (KPF), 2015 WL 629403 at *11 n.13 (S.D.N.Y. Feb. 13, 2015) ("[T]he characterization of Plaintiff as 'disabled' by medical providers for purposes of his Workers' Compensation claim is not particularly useful in the Social Security context because the two statutory schemes have completely different definitions of disability.").  In addition, an ALJ is not required to give any special weight to an opinion about the ultimate question of disability, *Killings v. Comm'r of Soc. Sec.*, No. 15 Civ. 8092 (AT) (JCF), 2016 WL 4989943, at *13 (S.D.N.Y. Sept. 16, 2016) ("But because this is an opinion on an issue reserved to the Commissioner, the ALJ was not required to give it special weight."), which the statement in question was.

Significant, too, Dr. Henoch's progress report concluding that Mr. Sampson had a 100% disability as a result of a 2011 work incident does not appear to have related to a substantial portion of the relevant period.  That progress report was based on Dr. Henoch's second examination of Mr. Sampson, on March 30, 2016.  R. at 232–37.  But Dr. Henoch had conducted a first examination of Mr. Sampson less than four weeks earlier, on February 24, 2016.  R. at 233.  And, at this first examination, Dr. Henoch stated that Mr. Sampson was *50%* disabled

due to the same 2011 work incident.  He further stated that, despite this impairment, Mr.

Sampson was currently working and back to his usual—not limited—work activities.  R. at 233–

36.  Thus, the evidence does not show that, for the entire period between 2011 and March 2016,

Mr. Sampson had been unable to work as a result of the 2011 injury; nor does it pinpoint in time

when the total disability first manifested.  *See Snell v. Comm'r of Soc. Sec.*, 177 F.3d 128, 136

(2d Cir. 1999) ("If [the claimant's] . . . condition never deteriorated from what it was while [he]

was working, [he] cannot claim to have become disabled by reason of [that] impairment.").  The

ALJ therefore did not err in not giving Dr. Henoch's second progress report substantial weight in

the ALJ's findings, or in concluding, based on the record as a whole, that Mr. Sampson was

capable of limited medium or sedentary work.  R. at 20–21.

**B.     Credibility Assessment**

Mr. Sampson next argues that the Report incorrectly affirmed the ALJ's credibility

assessment.  He argues that the ALJ failed to properly evaluate his subjective complaints about

his symptoms and his efforts to obtain relief from pain, specifically by  failing to address two

aspects of his testimony which explained his decision to decline surgery.  Objections at 5–6.

When evaluating a claimant's symptoms, an ALJ must "consider all [of the claimant's]

symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted

as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529.

Although the ALJ must take a claimant's reports of pain into account, the ALJ "is not required

to accept the claimant's subjective complaints without question; he may exercise discretion in

weighing the credibility of the claimant's testimony in light of the other evidence in the record."

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano*, 615 F.2d 23, 27

(2d Cir. 1979)).  If the claimant's symptoms "suggest a greater severity of impairment than can

be shown by objective medical evidence alone," the ALJ then must consider the other

information "submit[ted] about [the] symptoms."  20 C.F.R. § 404.1529(c).  These include both

medical sources and non-medical sources, "daily activities," the "duration, frequency, and

intensity" of the claimant's symptoms, "[p]recipitating and aggravating factors," medication

"taken to alleviate [the claimant's] pain or other symptoms," "[t]reatment, other than medication

. . . received for relief of [the claimant's] pain or other symptoms," and "[a]ny measures [the

claimant] use[s] or have used to relieve [their] pain or other symptoms."  *Id*.  Based on these

factors, ALJs are to apply their "discretion to evaluate the credibility of a claimant and to arrive

at an independent judgment . . . regarding the true extent of the pain alleged by [a claimant]."

*Martinez v. Astrue*, No. 10 Civ. 9284 (PKC), 2012 WL 4761541, at *11 (S.D.N.Y. Aug. 1, 2012)

(quoting *Minims v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984)).  A court must uphold the ALJ's

assessment of the claimant's subjective complaints of pain if the ALJ's findings are supported

by substantial evidence.  *Id.*

      The ALJ here correctly considered the treatment options that Mr. Sampson chose not to

pursue in evaluating the credibility of his subjective claims as to his pain.  20 C.F.R. § 404.1527.

Mr. Sampson argues, however, that the ALJ erred in failing to discuss his "fear of surgery" and

his "reference to physician advice."  Objections at 7.  This critique misses the mark.  In fact, the

ALJ explicitly referred to the fact that, according to Mr. Sampson's testimony, he decided to

forgo surgery based on a physician's advice that the surgery would not lead to 100%

improvement.  *See* R. at 19.  Summarizing Mr. Sampson's testimony, the ALJ's opinion stated

that Mr. Sampson had been "offered surgery for his knees, but he stated that he turned it down

11

because the physician recommending it stated that this would not lead to 100% improvement of his condition." R. at 19. To be sure, the ALJ's decision did not refer with similar specificity to Mr. Sampson's testimony that he "got scared" of potential surgery. But this was not error. Mr. Sampson's relevant testimony was this brief statement: "He said I would still have the problem. It's my decision. So I got scared. So I said well, since there's nothing he could do and he said it wasn't going to be 100%, I didn't take the surgery." R. at 47; Objections at 6. Mr. Sampson's stray use of the term "got scared"—on which he did not elaborate—was in the context of Mr. Sampson's explanation, to which the ALJ did explicitly refer, that he forewent the surgery primarily because it would not return his knee back to 100% functionality. R. at 46–47. An "ALJ is not required to mention or discuss every single piece of evidence in the record," *Tilles v. Comm'r of Soc. Sec.*, No. 13 Civ. 6743 (JPO), 2015 WL 1454919, at *4 (S.D.N.Y. March 31, 2015) (citations omitted), and thus did not err in not highlighting the two-word clause in Mr. Sampson's statement to the effect that he "got scared." *See also Lasalle v. Colvin*, No. 14 Civ. 872 (JTC), 2016 WL 420589, at *6 (W.D.N.Y. Feb. 4, 2016) ("The fact that the ALJ did not explicitly reference plaintiff's possible explanations for her failure to pursue treatment does not mean that they were not considered.").

In addition to considering Mr. Sampson's decision not to forgo surgery in assessing the extent of Mr. Sampson's knee impairments, the ALJ considered, and based its ruling on, other relevant evidence. This included the medical records relating to Mr. Sampson's knee problems, the fact that he was able to ambulate without a cane, and his successful alternative limited treatment including physical therapy and a single cortisone shot. R. at 18–21. *See Meyer v. Comm'r of Soc. Sec.*, 794 F. App'x 23, 26 (2d Cir. 2019) (deferring to ALJ's credibility finding

where the ALJ found, among other factors, that "the course of treatment pursued by [the claimant] after receiving steroidal injections had been fundamentally routine and/or conservative in nature." (citations omitted)); *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) ("It is the function of the Secretary, not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." (alteration in original) (citations omitted)).  The ALJ's credibility finding with respect to Mr. Sampson's level of pain was supported by substantial evidence and was not error.  The Court therefore rejects Mr. Sampson's second objection.

### C.    Record Development

Finally, Mr. Sampson argues that the ALJ failed to properly develop the record. Objections at 8 (citing *McKinley v. Comm'r, Soc. Sec. Admin.*, No. 17 Civ. 6439 (KHP), 2018 WL 4328840, at *6 (S.D.N.Y. Sept. 11, 2018) ("Whether the ALJ has met her duty to develop the record is a threshold question.")).  This Court, again, need "not entertain new grounds for relief or additional legal arguments that were not before the magistrate judge." *Rose o/b/o X.G.T.A.*, 2019 WL 2498279, at *2.  But in any event, these claims fail on the merits.  Mr. Sampson points to three areas as to which the ALJ ostensibly failed to develop the record, but the ALJ was not required to develop the record in any of the three.  *See Francisco v. Comm'r of Soc. Sec.*, No. 13 Civ. 1486 (TPG) (DF), 2015 WL 5316353, at *11 (S.D.N.Y. Sept. 11, 2015) ("[A]n ALJ is not required to attempt to obtain additional evidence to fill any gap in the medical evidence; rather an ALJ is required to do so only where the facts of the particular case suggest that further development is necessary to evaluate the claimant's condition fairly.").

13

First, Mr. Sampson argues that once he testified that part of his reason for not following through with the knee surgery was his fear of the surgery, the ALJ had a duty to develop the record regarding the risks of surgery to assess whether the asserted fear of surgery was reasonable.  Objections at 8.  But, although the governing regulations supported the ALJ's decision to consider Mr. Sampson's choice not to proceed with a specific treatment option, 20 C.F.R. § 404.1527, nothing in them required the ALJ to develop the record as to Mr. Sampson's shorthand statement that he "got scared."  Objections at 9.  And Mr. Sampson has not pointed to any precedent establishing such an obligation.

Second, Mr. Sampson argues that the ALJ erred in not adding to the record certain MRIs that were taken of his wrists as a result of Dr. Pae's orders.  Objections at 9–10.  In fact, however, the record does include medical evaluations describing and summarizing these MRIs. R. at 260.  For example, these records recount that the MRIs showed "ganglion cysts on both sides."  *Id.*  There has been no claim that these summaries of the MRIs were erroneous or materially incomplete.  As such, the ALJ had no obligation to obtain for the record the MRIs themselves, as opposed to the summaries of them made by qualified medical personnel.  *See Francisco*, 2015 WL 5316353, at *11.

Third, Mr. Sampson argues that the record should include the progress report from Dr. Henoch's March 30, 2016 examination, which found that Mr. Sampson had a "100% temporary disability."  Objections at 10.  Although Dr. Henoch stated on Mr. Sampson's Worker's Compensation form "see attached report" regarding the "Examination and Treatment" of Mr. Sampson, Dr. Henoch did not attach that report itself to the forms.  R. at 236–37; Objections at 10.

14

To be sure, it was the responsibility of the agency considering Mr. Sampson's DIB claim to develop his medical record by making "every reasonable effort to help [the claimant] get medical evidence from [their] own medical sources."  20 C.F.R. § 404.1512(b).  The operative regulations state that a "reasonable effort" requires the agency to make "an initial request for evidence from [the claimant's] medical source or entity that maintains [the claimant's] medical source's evidence, and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, [that the agency then] make one follow-up request to obtain the medical evidence necessary to make a determination."  *Id.*  The record reflects that the requisite effort was made here.  The state agency responsible for the adjudication of disability claims on behalf of the federal government under the SSA, the New York State Office of Temporary and Disability Assistance, requested Dr. Henoch's medical records and explained that it needed "to obtain complete medical documentation of the impairment" on August 24, 2016.  R. at 238.  Then, on September 3, 2016, the agency again requested Dr. Henoch's records.  R. at 66–67.  Thus, the agency satisfied its responsibility to develop the record as to Dr. Henoch's records.  While the progress report itself was not procured, Dr. Henoch's other records reported and ably explained his finding of a "100% temporary disability."  It was thus not error, let alone harmful error, that the progress report was not procured for the record.

## CONCLUSION

For the foregoing reasons, the Court adopts the Report in full.  The Commissioner's motion for judgment on the pleadings is granted, and Mr. Sampson's motion is denied.  The Court respectfully directs the Clerk of Court to terminate the motions pending at Dockets 11 and 15, and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: October 16, 2020
        New York, New York